UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DARLENE KROLL,                    )
                                  )   No. CV-09-0077-CI
          Plaintiff,              )
                                  )   ORDER DENYING PLAINTIFF'S
v.                                )   MOTION FOR SUMMARY JUDGMENT
                                  )   AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner   )   MOTION FOR SUMMARY JUDGMENT
of Social Security,               )
                                  )
          Defendant.              )
                                  )

     BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.
Rec. 10, 12.) Attorney Clifford King B'Hymer represents Darlene Kay
Kroll (Plaintiff); Special Assistant United States Attorney Daphne
Banay represents the Commissioner of Social Security (Defendant).
The parties have consented to proceed before a magistrate judge.
(Ct. Rec. 5.) After reviewing the administrative record and briefs
filed by the parties, the court **DENIES** Plaintiff's Motion for
Summary Judgment, and directs entry of judgment for Defendant.

                          **JURISDICTION**

     Plaintiff filed for disability insurance benefits (DIB) and
supplemental security income (SSI) on June 5, 2006. (Tr. 14, 65-67,
307-309.) She alleged disability due to agoraphobia, depression,
panic disorder, and anxiety with an alleged onset date of December
20, 2005. (Tr. 158.) Her claim was denied initially and on

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

reconsideration.  (Tr. 14, 33-34, 39-42.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on September 23, 2008, before ALJ Richard Paul Gaughen. (Tr. 314-340.) Plaintiff, who was represented by counsel, and vocational expert Daniel McKinney (VE) testified. (Tr. 315.)  The ALJ denied benefits on October 27, 2008. (Tr. 11-25.)  The Appeals Council denied review.  (Tr. 4-7.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 48 years old.  (Tr. 65, 336.)  She attended school until eleventh grade and did not obtain a high school equivalency degree.  (Tr. 162, 336.)  She was married and living with her spouse, and had one adult son and a daughter who lived with a grandparent. (Tr. 275.)  Plaintiff had a work history as a home attendant, and at the time of the hearing was working sixteen hours a week caring for an elderly person.  (Tr. 319, 324.)  She stated she did not work more because she was more comfortable at home, and it was difficult for her to be around crowds of people.  (Tr. 321-23.)

### ADMINISTRATIVE DECISION

At step one, ALJ Gaughen found although Plaintiff was working, her employment had not met the level of substantial gainful activity since the alleged onset date.   (Tr. 16.)  At step two, he found Plaintiff had severe impairments of "a major depressive disorder and panic disorder with agoraphobia."  (Tr. 17.)  At step three, he

determined the impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Pt. 404, Subpt. P, Appendix 1 (Listings).  (*Id.*)  At step four, he determined Plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels with the following non-exertional limitations:

> [C]laimant has deficits in arithmetic and written language skills.  She would not be able to engage in higher level social interaction, but she would be able to engage in perfunctory social interaction.  She would likely present as slow in adapting to changes to significant work changes or in learning new detailed instructions.  She can learn simple instructions and she has retained previously learned tasks.  The claimant has average intelligence and fair insight and judgment.

(Tr. 18.)  Considering this RFC and VE testimony, the ALJ found Plaintiff was able to perform her past relevant work as a home attendant.  (Tr. 24, 336-37.)  Because Plaintiff did not meet her burden at step four, the ALJ was not required to proceed to step five, where the burden of proof shifts to the Commissioner to show she could perform other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The ALJ concluded Plaintiff was not under a "disability" as defined by the Social Security Act at any time through the date of his decision.  (Tr. 24.)

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1    Substantial evidence is defined as being more than a mere
     scintilla, but less than a preponderance. *Id.* at 1098.
2    Put another way, substantial evidence is such relevant
     evidence as a reasonable mind might accept as adequate to
3    support a conclusion. *Richardson v. Perales*, 402 U.S.
     389, 401 (1971). If the evidence is susceptible to more
4    than one rational interpretation, the court may not
     substitute its judgment for that of the Commissioner.
5    *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
     Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
6
7         The ALJ is responsible for determining credibility,
     resolving conflicts in medical testimony, and resolving
8    ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
     Cir. 1995). The ALJ's determinations of law are reviewed
9    *de novo*, although deference is owed to a reasonable
     construction of the applicable statutes. *McNatt v. Apfel*,
10   201 F.3d 1084, 1087 (9th Cir. 2000).

11                        **SEQUENTIAL PROCESS**

12        Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

13   requirements necessary to establish disability:

14        Under the Social Security Act, individuals who are
     "under a disability" are eligible to receive benefits. 42
15   U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
     medically determinable physical or mental impairment"
16   which prevents one from engaging "in any substantial
     gainful activity" and is expected to result in death or
17   last "for a continuous period of not less than 12 months."
     42 U.S.C. § 423(d)(1)(A). Such an impairment must result
18   from "anatomical, physiological, or psychological
     abnormalities which are demonstrable by medically
19   acceptable clinical and laboratory diagnostic techniques."
     42 U.S.C. § 423(d)(3). The Act also provides that a
20   claimant will be eligible for benefits only if his
     impairments "are of such severity that he is not only
21   unable to do his previous work but cannot, considering his
     age, education and work experience, engage in any other
22   kind of substantial gainful work which exists in the
     national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus,
23   the definition of disability consists of both medical and
     vocational components.
24
25        In evaluating whether a claimant suffers from a
     disability, an ALJ must apply a five-step sequential
26   inquiry addressing both components of the definition,
     until a question is answered affirmatively or negatively
27   in such a way that an ultimate determination can be made.
     20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
28   claimant bears the burden of proving that [s]he is

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff argues the ALJ erred when he: (1) improperly evaluated the opinions of examining and non-examining medical sources; and (2) failed to consider obesity when assessing her ability to do basic work activities.  (Ct. Rec. 11 at 9-10.)

**DISCUSSION**

**A.    Evaluation of Medical Sources Opinions**

The Commissioner's regulations distinguish among the opinions

of three types of acceptable medical sources considered in disability proceedings: (1) sources who have treated the claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. §§ 404.1527, 416.927.   A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion generally carries more weight than a non-examining reviewing or consulting physician's opinion. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), "As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830 (*citation omitted*).   If the opinion is contradicted, it can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.  Although the opinions of non-examining physicians generally are not given as much weight as examining physicians, their opinions are considered substantial evidence that may be given significant weight if supported by and consistent with other evidence in the record. *Lester,* 81 F.3d at 830-31.

Plaintiff contends the ALJ did not properly credit the findings of Richard Gallaher, Ph.D., the examining psychologist who interviewed Plaintiff on August 28, 2006, or the limitations assessed by non-examining agency psychologist, James Bailey, Ph.D. (Ct. Rec. 11 at 5-7.)  In his argument, Plaintiff references

extensive case law relating to the special weight accorded treating medical sources in disability proceedings.  (Ct. Rec. 11 at 6-9.) However, neither Dr. Gallaher nor Dr. Bailey is a treating source in this case.

**1.  Dr. Gallaher**

At the request of the Social Security Administraton, Dr. Gallaher conducted a three-hour mental status interview with Plaintiff after reviewing a self-report of Statement of Health, Education and Employment, a disability report, and an intake assessment and notes from Idaho Department of Health and Welfare. (Tr. 238, 247-53.)  From the interview and review of records,[1] Dr. Gallaher diagnosed posttraumatic stress disorder; major depressive disorder, recurrent, severe without psychotic features; panic disorder with agoraphobia; rule out bipolar disorder (most recent episode depressed, severe); and personality disorder NOS.  (Tr. 244.)  He assessed a current Global Assessment of Functioning (GAF) score of 45, and highest GAF in the last year of 45.  (*Id.*) Plaintiff argues the GAF score assessed by Dr. Gallaher, combined with other scores noted in the record, require a finding of disability.  (Ct. Rec. 11 at 6.)

The GAF scale is a common tool for tracking and evaluating the overall psychological functioning of a patient.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV) at 32-34

_____

[1] Although Plaintiff references tests concluded by Dr. Gallaher (Ct. Rec. 11 at 5), it does not appear Dr. Gallaher administered or reviewed objective psychological testing as part of his evaluation. (Tr. 238.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

(1995). A score of 41-50 indicates "severe symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation or school function (*e.g.*, no friends, unable to keep a job)"; 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflict with peers or co-workers)." A score of 61-70 indicates "some mild symptoms, (*e.g.*, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." (*Id.*)

As explained by the DSM-IV, the GAF scale is intended to assist practitioner's in treatment decisions. *Id.* at 36. It is not intended to be a measure of disability. In fact, the Commissioner has explicitly disavowed any use of the GAF scores as an indicator of disability. In August 2000, the Commissioner, in discussing comments to the current mental disorder evaluation regulations, stated that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000) (*found at* 2002 WL 1173632). Plaintiff has provided no authority to support his argument that disability may be determined on the basis GAF scores alone. *See Howard v. Commissioner of Soc. Security*, 276 F.3d 235, 241 (6th Cir. 2002).

Nonetheless, the ALJ thoroughly discussed the GAF score assessed by Dr. Gallaher and gave specific, legitimate reasons for

giving his assessment little weight. (Tr. 23.) Specifically, he referenced higher GAF ratings and reports of improvement in functioning from Plaintiff's treating counselors in 2007 and 2008. (*See* Tr. 247, 249, 257, 280, 284, 296, 300.) As found by the ALJ, these counselors "had established an ongoing counseling relationship with the claimant, [and] it is likely the counselor would have a better overall picture of the claimant's functional abilities than would a consultative examiner who only saw the claimant one time." (Tr. 23.) He also referenced a November 2007 medication management report from Jean Hammond, M.D., who interviewed Plaintiff for a medication management consult. Based on her interview and a review of prior records and counselor notes, Dr. Hammond estimated a GAF score of 60-70. (Tr. 23, 275-76.) Thus, the ALJ gave specific and legitimate reasons for assigning little weight to Dr. Gallaher's single GAF score of 45. *Social Security Ruling* (*SSR*) 06-3p. The ALJ's evaluation of Dr. Gallaher's opinions is supported by substantial evidence in the entire record and is free of legal error.

### 2.   Dr. Bailey

Plaintiff argues the "moderate" limitations included in the check box portion (Section I) of the mental RFC form completed by Dr. Bailey require a finding of disability. (Ct. Rec. 11 at 6.) In support of this contention, Plaintiff references VE testimony that an individual with these limitations could not maintain work over time. (*Id.*; Tr. 202-04, 337-38.) Plaintiff contends the ALJ failed to address this testimony, and appears to argue Dr. Bailey was a treating source whose limitation findings warranted more weight.

1  (*See* Ct. Rec. 11 at 6-8.)  Plaintiff's argument is unpersuasive.

2      Dr. Bailey is a non-examining agency psychologist,[2] who

3  reviewed Plaintiff's records in September 2006.  (Tr. 195-204.)

4  After reviewing the records available, Dr. Bailey noted several

5  moderate limitations in Plaintiff's mental functioning.  (Tr. 202-

6  03.)  In the narrative portion of his report, however, Dr. Bailey

7  concluded Plaintiff was "capable of uncomplicated work," "would do

8  best with only superficial interaction with the public," and was

9  "capable of planning, travel, and avoiding hazards."  (Tr. 204.)

10      Where, as here, there is a perceived conflict or ambiguity in

11  medical evidence, it is the ALJ's responsibility to resolve the

12  conflict.  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

13  The ALJ properly addressed Dr. Bailey's report and the VE testimony

14  based on the checkmark portion of Dr. Bailey's report, found in

15  Section I of the mental RFC form.  (Tr. 22-23.)  He assigned "little

16  weight to that analysis."  (Tr. 22.)  Citing agency guidelines, the

17  ALJ gave a lengthy explanation for his rejection of these

18  limitations, stating that the checkmark "worksheet" in Section I

19  _____

20      [2] As reviewing medical sources in disability proceedings,

21  "state agency medical and psychological consultants are highly

22  qualified physicians and psychologists who are experts in the

23  evaluation of medical issues in disability claims under the Social

24  Security Act."  *SSR* 96-6p.  Their findings of fact must be treated

25  as expert opinion evidence of non-examining sources by the ALJ, who

26  can give weight to these opinions only insofar as they are supported

27  by evidence in the case record.    The ALJ cannot ignore these

28  opinions and must explain the weight given.  *Id*.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

"does not constitute the RFC assessment." (Tr. 23.) However, the ALJ gave "significant weight" to Dr. Bailey's narrative opinions, which agency guidelines indicate are "the actual mental RFC assessment." *Id.* Dr. Bailey's credited opinions based on evidence in 2006 are consistent the ALJ's final RFC determination and the opinions of mental health providers who treated Plaintiff in 2007 and 2008, as discussed above, and are, therefore, supported by substantial evidence. (Tr. 18.) The ALJ's explanation is based on substantial evidence and his findings represent a rational interpretation of the record in its entirety; he did not err in the weight given to Dr. Bailey's opinions.

**B.   Obesity**

Plaintiff contends the ALJ's failure to consider the effects of obesity when determining her ability to work is cause for reversal. (Ct. Rec. 11 at 9.) While obesity has been eliminated as a Listing, it is considered a medically determine impairment and can constitute the equivalence of a Listing. *SSR* 02-01p. *Social Security Ruling* 02-01p addresses the significance of obesity in the sequential evaluation process. The ruling recognizes that obesity will constitute a severe impairment when "it significantly limits an individual's physical or mental ability to do basic work activities. . . ." *SSR* 02-01p. However, the fact that obesity exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60. Nonetheless, the Commissioner advises where there is evidence of obesity, the limiting effects (if any) should be considered in combination with other medical condition, such as

musculoskeletal impairments and depression.  *SSR* 02-01p.

Plaintiff testified she is 64 inches in height and her weight fluctuated between 210 and 240 pounds.  (Tr. 335.)  Medical records indicate her height was 65 inches and weight was between 247 and 252 pounds.  (Tr. 188-90.)  She stated she thought her weight gain was due to lack of exercise and ambition. (*Id.*)  Although Plaintiff's weight was mentioned in medical reports, and Dr. Hammond noted "obesity" in her Axis III impressions (Tr. 276), Plaintiff has not presented a theory or evidence that she met or equaled the prior listing for obesity.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09 (Table II) (April 1, 1999) (64 inches/258 pounds; 65 inches/266 pounds).  Further, she does not reference evidentiary support for her argument that her weight had an impact on her functioning or present a theory as to how her weight impacts her capacity for work related tasks.  Independent review of the record reveals no medical opinions that Plaintiff's condition was aggravated by obesity.

Nonetheless, the ALJ specifically discussed medical conditions that could be impacted by obesity.  As found by the ALJ, Plaintiff did not mention back pain at the hearing and medical records did not reflect treatment for back problems.  (Tr. 17.)  In his assessment of Plaintiff's ability to work, the ALJ discussed treatment notes from mental health counselors who reported periods in which Plaintiff denied having symptoms of depression, her development of good coping skills, her improvement of depression symptoms (which were considered relatively mild), and cyclical problems with anger which her counselor noted were of short duration.  (Tr. 20; *see, e.g.,* Tr. 277-82, 285, 290, 300.) Plaintiff neither alleged mental

symptoms that were aggravated by her weight nor met her burden of providing evidence that her excessive weight contributed to her functional impairments.

The ALJ's hypothetical included all physical and mental limitations supported by the record and Plaintiff's credible testimony; therefore, the VE's opinion that Plaintiff could perform her past work is supported by substantial evidence.  The ALJ's exclusion of limitations due to obesity in his RFC determination is a rational interpretation of the evidence presented and does not constitute legal error.[3]  His RFC findings are supported by

---

[3] It is noted on independent review that when ALJ Gaughen presented his hypothetical individual to the VE during the hearing, he was mindful of references to obesity in the medical record when he stated: "[T]he lady presents with no exertional impairments. There is a vocationally relevant issue under the rules, however, of some obesity."  (Tr. 336.)  The VE, who had read the vocational report in the record and was present throughout Plaintiff's description of her past work, confirmed the home attendant work as performed by Plaintiff would be light exertion.  (Tr. 336.)  He then opined the hypothetical individual presented would be able to perform Plaintiff's past relevant work as a home attendant.  (Tr. 320, 324-28, 337.)  Thus, even assuming the ALJ erred at step two when he did not include obesity as a non-severe impairment or discuss it in his final RFC determination, the ALJ's hypothetical and the VE's consideration of obesity with the other limitations at step four renders the alleged error harmless.  *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007); *Stout v. Commissioner, Social Sec.*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1  substantial evidence and may not be disturbed.  *Key,* 754 F.2d at

2  1549.

3  **CONCLUSION**

4      The ALJ's determination is a rational interpretation of the

5  record in its entirety and is supported by substantial evidence.

6  Accordingly,

7      **IT IS ORDERED:**

8      1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 10)** is

9  **DENIED**;

10     2.  Defendant's Motion for Summary Judgment **(Ct. Rec. 12)** is

11 **GRANTED.**

12     The District Court Executive is directed to file this Order and

13 provide a copy to counsel for Plaintiff and Defendant.  Judgment

14 shall be entered for Defendant and the file closed.

15     DATED January 25, 2010.

16

17              S/ CYNTHIA IMBROGNO
         UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24 _____

25 *Admin.,* 454 F.3d 1050, 1056 (9th Cir. 2006)(non-prejudicial error in

26 proceedings is harmless); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9

27 (9th Cir. 1995)(error is harmless when the correction of that error

28 would not alter the result).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14